Please call the next case. 212-0494 Michael Davila v. Service Development Center Counsel, you may proceed. Good morning. Please the court. Counsel, I'm Charles Cohn on behalf of the petitioner Michael Davila. We're here today on appeal from a ruling on a 19b8a petition where the arbitrator had ruled against the petitioner, essentially denying that he had an accident arising out of the course of employment and attacking his credibility. The decision of arbitrator Lamy is basically three paragraphs in length, and it is the only written ruling in the case. The case was affirmed by the commission and by the trial judge without any further comment on the facts or law of the case. Well, let me ask, would you concede that this case involves part of the decision rests on the arbitrator and commission's finding that the claimant wasn't credible? It rests on that finding, but the bases for that finding are wrong as a matter of law and also factually deficient as well. As we indicated getting into this thing, one of the principal bases for the finding in the bases that we get from arbitrator Lamy is that the petitioner testified three individuals came to his aid and removed the tables from him and helped him, but the petitioner did not call any of these witnesses to support his testimony. Now, as I indicated in the briefs, this is 180 degrees from the law. These persons, the evidence is very clear, were employees of the Respondent Search Developmental Center. As such, my client under substantial case law has no duty to call these people. On the other hand, the respondent, if they felt these individuals would have contradicted Mr. Davila, would have said the accident didn't happen or the accident didn't happen the way Mr. Davila said it did, it was their obligation to call these people. This is case law. I mean, over in the ---- Well, before we get into that, let's go back to some basic credibility issues briefly in summary. The evidence appears to be undisputed that the claimant himself admitted recording inaccuracies and false information in the timesheets. Correct? That is true, and that was not at the time of this occurrence, but in the week before. The week before was a vacation week. There were very few people on the premises. He's a maintenance man and was ---- Let's assume he had some explanation for doing that. You want to argue it's legitimate? Okay. But he did that. Doesn't that create an immediate credibility problem for the gentleman? It may create some credibility problem, but I don't think on the whole that that wipes this man out completely because he did one thing wrong at a different point in time. No, it doesn't. Mr. Brothers had to say. Mr. Brothers had to say. Now, we dispute whether Mr. Brothers' testimony is legitimate in its entirety as we discussed, but let me explain. He testified that he had a conversation with the claimant who described having back problems long before this event and stated he was going to get a doctor, get some stronger medication, even if he had to fake it. There's multiple problems with that. First, I know the petitioner testified that he had no such conversation with Mr. Brothers. Second of all, Mr. Brothers, according to the respondent's history, came forward with this story to Greg Peterson. Mr. Brothers is not a regular coworker with Michael Davila. He normally works at the search's other facility in Mount Prospect. They worked together apparently during this vacation week the week before. And Mr. Brothers supposedly comes forward to Greg Peterson, the head of the company, at some point with this story. According to Mr. Brothers' testimony, Mr. Peterson asked him to give him a written note or memorandum about what he's saying. According to Mr. Peterson said that Brothers came forward with this note. Brothers said Mr. Peterson asked for this note. The only thing that is certain is this note no longer exists. This note, on the 29th of January, Mr. Peterson creates a typewritten or computer written memorandum summarizing Mr. Brothers' story. This memorandum summarizes Mr. Peterson's story. It's a typewritten note, supposedly based on this handwritten note. But all concede the handwritten note was lost. This is classic spoiliation of evidence. The note which we would be entitled to cross-examine the defense on as to the note when it was created and what not. All the facts regarding the creation of this handwritten note that supposedly was the basis by which Mr. Brothers comes forward with this story. What relief did you request in that regard? I'm sorry? What relief did you request in that regard if there was a spoliation claim? We did not request any relief, but we, I mean, I don't know that there was any relief to be requested. We pointed these facts out with regard to the note before the commission and before the circuit court. Okay, so now you're here and the relief that you're requesting here is that this be, the arbitrator's decision be reversed because you believe there wasn't an inference made in regards to that statement. Is that right? Yes, but furthermore. How do you know that there wasn't an inference made by the arbitrator? I don't know what there was because the arbitrator made no comment whatsoever about Mr. Brothers' testimony or Mr. Peterson's testimony. All right. But what you're wanting us to do, it seems like, is to take anything that might be positive in favor of your client, disregard anything that's a negative for your client in terms of the record here. This is a fairly general question, but in fact, it would seem that this was ultimately a credibility determination. And as has been pointed out here, several of the items of evidence weigh heavily against your client being credible. The one thing that wasn't mentioned, but your client was fired for falsifying work hours, true? He apparently was fired for the work hours situation regarding the week before. He was fired on the 14th of January. And there is some inference in some of the arguments that he did this thing, he had this accident because he knew he was going to be fired, which does not make sense. I don't think there was any basis in anybody's mind to think he knew he was going to be fired when he got hurt on the 5th of January. For that matter, on the 14th also, he had an x-ray done, which was the first time he was diagnosed with a spondylolisthesis, which was ultimately the basis a year later that Dr. Alzate said that he needed surgery. And I think the idea that this didn't happen, well, where in hell did the spondylolisthesis come from? Well, let's get back to something. You've explained away or attempted to explain away the falsification of the records. You've attempted to explain away Brother's testimony. What about this one? Did your client not testify that he had no back problems prior to January 2009, when in fact Dr. Piotrowski's records clearly reflect he had a history of back issues several months prior to that? So how are you going to explain away that denial? Is there an explanation for that denial? I don't believe there was any serious back issues, and I don't recall what the records – I don't recall much of her prior records being in the record, and I don't think there was anything of major significance in the record. And it's very clear that there was some kind of significant aggravation taking place on the event of the 5th of – So you're telling us here that the commission had absolutely no basis to draw an adverse reaction to your client's credibility? I wouldn't – I don't have to – I mean, how many incidents do you have to add on top of another before you get the picture there's a problem with the credibility? The problem is, with regard to the prior history, there's no argument made, and I don't even think the defense put anything into the record of a prior history of any significant back issues in Dr. Piotrowski's records. I think your client flatly denied any history. His doctor's records contradict him. What is the significance has to do with anything? He said he had no problems with his back prior to – what is the fudge factor in no problems? I – the problems were not of significance enough or close enough in time that necessarily would have been some kind of red flag to say, oh, I have a big back problem that I – that he should have told somebody about. There's no such situation here. The back problems arose primarily from the event of the 5th of January of that year. If the event ever occurred. Of course, but the event – his testimony, and he goes to the emergency room. They do find – and that's another inconsistency between the medical record, not whatever Mr. DeLilla said, but the medical record and what the arbitrator said. And that's probably the biggest reason we discussed regarding the manifest way, is the medical history. And he – arbitrator Lamme says there's no objective findings. But the doctors in the emergency room did find spasms and tenderness to palpation. These are findings that I understand require the doctor to be putting their hands on and feeling something about this man. So – The point is, isn't it just the fact that this is an unwitnessed incident? It's an unwitnessed incident, but we have – but the defense – They just don't believe your help, that it even occurred. Yes, but the bases for not believing him I don't think are fair. He's saying it didn't occur because he didn't call witnesses that the other side would be obligated to call to say – and that they had control over, because they're their people. Hold on, hold on, hold on. I don't even know that. They're supposed to call witnesses to say that an event never happened? It's very simple. Yes, they can. This lady Burnett was told about the accident within a short time after it happened. Apparently there's multiple buildings. She comes from the other building to the building where the accident happens at some point. And she finds out this man is accident, he's reporting an accident. Now, at some point in time, apparently, doubt creeps into her mind or somebody's mind in the management of search that this man got hurt. Now, if I were Burnett or Peterson, you'd say, who was working there at this point in time? Find him out. Or even ask the fellow, who came to your aid? Who was there with you? The first time they ever find out he's contending that these two people witnessed the accident was during the arbitration hearing. There's no discovery in this case. No, of course there's not. But she doubts it happened. And she said no one – her defense is no one came forward. So, because no one else came up to her about this accident, that means that they had no obligation. She did no investigation. Was she required to? Or do you have a burden of proof? I have burden of proof, and the man testified. He testified that there was an accident. Okay? He testified his back was never injured before, but his doctor's records say it was. Brothers takes the stand and says, this guy says he wants a pain medication, he isn't getting it strong enough, so he's going to get it from a doctor, even if he has to fake an occurrence to get it. And, I mean, the commission looks at this and says, this guy's a phony. We don't believe him. So why can't they do that? Well, this is the situation. How they came to create Brothers' testimony is a little bit troubling in itself. Brothers' testimony arises from a written report dated 1-29-2009. After the application for adjustment of claim is filed and likely served on search. At that point in time, Mr. Peterson types this report of Brothers' history, and then later he testifies that the report is derived from a handwritten letter that Mr. Brothers wrote and gave to Mr. Peterson, which, by the way, all these people work regularly at their Mount Prospect location. Let's say that's all improper. Is it proper for Brothers to testify, period? Yes, but then there's a presumption that his testimony is improper for spoilation of evidence. Spoilation of evidence creates a presumption that. . . So why did you want to strike him based on grounds of spoilation? He didn't do that. The facts were before that. . . I don't know that that was. . . Well, he has a written testimony even based on anything except what he said he, the claimant, told him. What's the spoilation of evidence? The handwritten note is gone. Pardon? The handwritten note is gone. We have no ability to view it, cross-examine anybody on it. This note by the testimony of Mr. Peterson is the basis for the typed letter that came into evidence. Right. And the handwritten note was gone. Both of the men, nobody knows where the handwritten note is. For that matter, Mr. Peterson and Mr. Brothers are inconsistent about the source of the creation. Brothers says Peterson asked him to create it. Peterson says Brothers came forward with it. Don't you think, as hearing counsel, that there's an obligation there to address it right then and there with the arbitrator, just as Justice Hoffman asked to, by requesting some relief in that regard, and move the strike or move the bar? You know, I don't have a good answer for that because I don't know what procedure would be appropriate in the circumstance with the spoilation of evidence situation. I mean, wouldn't you find out about it? If it's better to do it by argument or better to do it or propose decision or to do it by moving to strike or bar there. All I know, I concede it didn't happen. But I don't know that that's the beginning or middle of end of it because this arbitrator should be versed in the law. So the evidence is a handwritten note by the person who's present testifying. Is that it? It disappears, so there has to be spoilation. It disappeared. Even though nobody knows what happened to it. That is enough. If you knew or should have known that something is evidence and you don't save it, and this is, they had to know, Your Honor, because they're saying this man is a fake and a liar and this nice co-worker comes forward with this note and they don't keep it? Counsel, you're not, there's no evidence in the record that the handwritten note said anything different than the typewritten version. We have a right to see it. I understand that, but there's no evidence in the record that there was any difference, is there? There's no evidence. There's no way of knowing. Yes, that is true, but that is kind of beside the point. You've gone past your time. You'll have time on reply. Thank you. Thank you, Your Honor. Counsel, may I respond? Thank you. There is one issue and one issue only. Who are you, first of all? My name is Bruce Obrin for Respondent Search and Development Health Center. I was going to get to that. You don't want to steal victory from the jaws of victory, do you? No, I was going to get to my name in a moment. There's one issue and one issue only. Did Petitioner credibly testify that he was injured at work? That's it. The Commission found he did. Correct. All right. So why are we here? I can sit down if you like. That would be a good idea. No, I'm sorry. Let's go to this. I mean, that's the issue. Let's go to this note that was written by Roberts. Jesus. Let me say that the note, that is completely, that's really not even relevant. What is relevant is that the arbitrator found Petitioner wasn't credible based on Petitioner's own actions, his own testimony, which you've all discussed here so far. The fact that he admitted to falsifying timesheets, which is fraud. The fact that he told his physician that he, or he testified that he had no prior back pain, where, in fact, he told the physician that he had. Subsequent to this alleged accident, he went back to the doctor, never even mentioned the work accident, alleged work accident. In fact, he told the doctor that he had an incident at work shoveling after this alleged accident occurred, when he never even returned back to work. There's an abundance of evidence here that Petitioner was not credible. You know, I've had cases, unfortunately, over the years where the arbitrators have asked me, counsel, if you don't believe the accident happened the way Petitioner alleges, how did it happen? Unfortunately, it's mind-boggling because that puts the burden of proof on me. Fortunately, Arbitrator Lamme didn't do that here because he knew that it was Petitioner's burden of proof, that the Petitioner was not credible. Everything else that counsel has thrown at you is a red herring. It's a diversion. It's an attempt to steer you away from that one and only issue. Was Petitioner credible? And the arbitrator who was sitting literally two feet from him and watched him testify found that he wasn't. The commission agreed in a matter of days, 3-0 unanimously, and the circuit court affirmed. Quite frankly, Judge Hoffman, I don't know why we're here. Thank you, counsel. Counsel, you may reply. Sometimes credibility goes beyond what the Petitioner said. And in a case, in a commission case, we look at the medical records as well. He comes to the emergency room on the day of the occurrence with objective findings. And less than two weeks later, he's diagnosed by x-ray with a spondylolisthesis. And the arbitrator, later, when Dr. Alzate, a year later, says that he needs surgery for the same spondylolisthesis that's diagnosed by x-ray less than two weeks after the occurrence, also diagnosed by Dr. Kornblatt, I think, a couple of months. Well, suppose somebody has a preexisting condition and they could say they have an accident and they don't. It perfectly explains your scenario. It answers your question of how this could be, doesn't it? If he had a preexisting condition, but the medical records now would say no. Well, we know he had preexisting treatment, right? Yes, but the preexisting treatment was nominal by comparison to subsequent. And the spondylolisthesis was only diagnosed after this event. Well, how do we know there was an event? That's what everybody is saying. How do we know it's possible there was no event? The only thing we can say is he reported this event to Burnett the day of the occurrence. He reported it to the emergency room the day of the occurrence. True. And that's another thing. The arbitrator is trying to somehow say certain things about the event. I mean, he's basey. If you read his words, I mean, he finds the man not credible. He finds him not credible, one, because he didn't call people that he doesn't have an obligation to call, two, because his explanation for how the event took place, somehow in the mind of Arbitrator Lammey that he hasn't given us the courtesy of saying, somehow he didn't think was... How about what the arbitrator was saying was, I didn't believe you and you didn't call anybody else to back up your story? Well, the medical... How's that? And Burnett acknowledges that he comes with this story. And Burnett has no basis. That's another thing. He cites Burnett saying that she came to the scene of the accident. There was no physical evidence that the incident occurred. She came sometime well after, a daytime well after this took place, and after she conceded that the tables would have been removed. And then she comes sometime well after. It's not even clear what she looked at or where she looked at, just that the evidence that the tables spewed about isn't there anymore. And that's another basis. When you say that the arbitrator found this man not credible, everything he puts on paper is questionable. The calling of not calling witnesses he isn't obligated to call, Burnett's testimony, she didn't see evidence of the occurrence well afterwards when she acknowledged that the tables would have been removed. And then she goes on to say that there was no signs of trauma when we believe that the records do indicate that there were signs of trauma. So every basis that in the second paragraph that he hits to say this guy is, that he says it's inconsistent on the day of just isn't so. And then his attack on Dr. Alzate for being inconsistent with history, no. The spondylolisthesis was diagnosed almost from day one. So with just every basis, when you look at this half page here that Arbitrator Lanning wrote, every time you put something on paper, it's disprovable in the record. The only basis that exists in the record, I mean his attack on Alzate is nonsense, but the only basis that exists in the record for saying the man is not credible is the fact that it's all conceded, that he did a bad thing the week before, and that he wrote his time in advance. He wrote, what he did was he went and he filled in his timesheets in advance, and then he ended up when he actually worked, didn't work as much time as he filled in his timesheets, that's what he did. He conceded. He did this bad thing. Thank you, Your Honor.